Jack KLOTZ, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant,

v.

Darrell HOWE, Defendant-Appellee.

Jack KLOTZ, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee,

v.

Darrell HOWE, Defendant.

Jack KLOTZ, Plaintiff,

v.

UNITED STATES of America, Defendant-Appellee,

v.

Darrell HOWE, Defendant-Appellant.

Nos. 77–3319, 77–3366 and 77–3385.

United States Court of Appeals, Ninth Circuit.

Aug. 22, 1979.

Marilyn E. Brookens, Washington, D. C., for defendant-appellant.

Edwin C. Schreiber, Keltner & Schreiber, Beverly Hills, Cal., Kenneth J. Murphy, Jr., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and FITZGERALD,* District Judge.

HUFSTEDLER, Circuit Judge:

The Government appeals from a judgment awarding Klotz judgment for $600 in his tax refund suit against the Government and denying any relief to the Government on its counterclaim against Klotz and Howe to recover taxes and penalties under sections 6671 and 6672 of the Internal Revenue Code of 1954. Klotz and Howe cross-appeal from that portion of the judgment denying them attorneys' fees under 42 U.S.C. § 1988. The Government contends that the district court erred in holding that Klotz and Howe were not "responsible" persons who had "willfully" failed to pay payroll taxes. The Government does not contest that part of the judgment awarding a refund to Klotz. Howe abandoned his request for attorney's fees in respect of proceedings before the district court. Klotz contends that he is entitled to attorney's fees in respect of the trial court proceedings, and both Howe and Klotz request attorneys' fees on appeal. We affirm the district court, and we deny attorneys' fees on appeal.

This case arises from the collapse of Hamilton-Howe, an interior decorating firm. Howe and his mother first formed

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

the company. It initially experienced modest success in furnishing and decorating model homes exhibited at various housing developments in California. From late 1969 until early 1970, Howe was president, a director, and a major stockholder in Hamilton-Howe. For about 15 years, Klotz and his wife did interior designing under the name Regency-Row. About two years before Hamilton-Howe's troubles began, Klotz and his wife agreed to work with Hamilton-Howe. Mrs. Klotz was a designer for model houses, and Klotz was a purchasing agent. In 1968, a year after he joined Hamilton-Howe, Klotz became a signatory of the corporation's bank account at the Beverly Hills National Bank. Two signatures were needed to authorize a withdrawal, and at that time, the authorized signatories were Howe and his mother. In mid-1969, Hamilton-Howe began experiencing serious financial problems. At that time Klotz was made an officer and director of the corporation, and he was given the title of secretary-treasurer. Klotz was never a shareholder, and his new titles had no effect on his job with the corporation.

In its palmy days, Hamilton-Howe employed 60 to 70 people and had gross receipts of more than $750,000 per year. By June, 1969, the corporation was in serious financial straits. Howe was scrambling to ease the corporation's cash flow problems; in May, 1969, he obtained a loan from his accountants. Through his accountants, Howe met Albertini and Benedetti, who tried to revive the business. In June, 1969, Albertini and Benedetti guaranteed the corporation's promissory notes upon condition that they be allowed to control the expenditures of Hamilton-Howe. Benedetti's name was added to the list of authorized signatures at the Beverly Hills National Bank, and his signature was required on all checks.

Hamilton-Howe failed to pay withholding and payroll taxes after the second quarter of 1969. From July 1, 1969, until the corporation collapsed, approximately $43,000 in withholding and payroll taxes accrued and were unpaid.

After July 1, 1969, Klotz became increasingly disenchanted with his job. He was not aware of any of the loan negotiations that were taking place. By mid-August, his relationship with Howe had so far deteriorated that the two men were not speaking to each other. Klotz was told in mid-August that he was no longer authorized to sign checks for the corporation. When the corporation moved in August, Klotz was not allocated even a desk in the new offices. The firm's bookkeeper testified that Benedetti, during this period, was directing which creditors and suppliers were to be paid and that he was also taking over many of the functions earlier performed by Klotz in billing customers and checking inventory. Klotz was effectively moved out of the corporation in August, 1969, and by September, his only activities were attending one or two corporate meetings. He formally resigned on October 28, 1969.

Howe testified that the price of financial support from Benedetti and Albertini was control of the corporate finances. Benedetti was the person who decided what checks were to be issued and to whom. Benedetti contradicted the testimony of Howe and the corporate bookkeeper about the extent of his role in controlling the corporation during July and August, 1969. Albertini's testimony corroborated Benedetti's.

During its final days, Hamilton-Howe's financial problems multiplied. The corporation had a contract to decorate two model housing complexes for the Grant Company. In an effort to keep the company alive and complete the contract, the Grant Company financed Hamilton-Howe's current payroll, and during that era, the Grant Company kept records of the payroll and drew checks on its own account not only for the payroll, but for suppliers. Hamilton-Howe collapsed in January, 1970.

The district court resolved the conflicts in the evidence against the Government. It held that neither Klotz nor Howe were "responsible" officers within the meaning of section 6672 and that neither of them had "willfully" failed to pay over taxes owed by the corporation. It concluded that, during

the critical tax periods, Benedetti, Albertini, the Grant Company, and others, entirely controlled the corporation's finances. Accordingly, the district court decided that neither Klotz nor Howe was liable for the taxes assessed against them under section 6672.

I

Under the Internal Revenue Code of 1954, certain employers are required to withhold federal income and social security taxes from wages of their employees. Once withheld, such taxes are a special trust fund for the United States. When an employer has withheld a tax, but has failed to pay it over to the Government, the employee is credited with having paid the amount to the Government; whenever the Government is unable to collect from an insolvent corporate employer, unless it has recourse against the person responsible for non-payment, the taxes are not recoverable. To protect the public fisc, Congress enacted section 6672 of the code which, in substance, provides that any person who is required to collect, account for and pay over such taxes, is subject to a penalty tax equal to the amount of tax not collected, accounted for or paid over.[1]

The Government argues that, even if persons other than Klotz and Howe had taken control of the corporation, both men had sufficient "involvement" or "control" in deciding which creditors should be paid as to bring them within the ambit of section 6672. In short, the Government tries to avoid the impact of the clearly erroneous rule by characterizing the issue as a question of law. The effort is unavailing.

Although the concepts of willfulness and responsibility, as used in section 6672, are mixtures of fact and law, the primary ingredient in any particular case is factual. (*Dudley v. United States* (9th Cir. 1970) 428 F.2d 1196, 1200; *United States v. Leuschner* (9th Cir. 1964) 336 F.2d 246; *Wilson v. United States* (9th Cir. 1958) 250 F.2d 312.)

We need not reach the question whether either Howe or Klotz was a "responsible" person within the meaning of the statute because we are convinced that the district court's finding that neither Klotz nor Howe willfully failed to pay the taxes cannot be disturbed on appeal. "Willfulness" is defined as a "voluntary, conscious and intentional act to prefer other creditors over the United States." (*Sorenson v. United States* (9th Cir. 1975) 521 F.2d 325, 328; *United States v. Leuschner, supra,* 336 F.2d at 247–48; *Bloom v. United States* (9th Cir. 1959) 272 F.2d 215.) In establishing willfulness, the Government need not prove an intent to defraud or even the existence of a bad motive. (*United States*

---

1. The pertinent provisions of the Internal Revenue Code of 1954 are as follows:

SEC. 6671. *Rules for Application of Assessable Penalties*

. . . . .

(b) *Person Defined.*—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

SEC. 6672. *Failure to collect and pay over tax, or attempt to evade or defeat tax*
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

SEC. 7501. *Liability for taxes withheld or collected*
(a) *General Rule.*—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.
(b) *Penalties.*—For penalties applicable to violations of this section, see sections 6672 and 7202.

*v. Leuschner, supra,* 336 F.2d at 248.) But the Government must prove more than mere negligence. (*Ibid.*)

■ Upon the basis of evidence credited by the district court, Klotz was not involved in preparing any checks, except one made out to cover his own salary, at any time after mid-August, 1969. He did not even know whether payroll taxes were being paid. Even if his titles were not merely empty, but placed some kind of duty upon him to inquire about the payment of taxes, his failure to perform that duty and undertake some kind of positive action was, at most, merely negligent.

Howe's role in the corporation was considerably greater than Klotz'. However, we cannot agree with the Government that the district court's finding that Howe did not willfully prefer other creditors over the Government is clearly erroneous. On conflicting evidence, the district court concluded that Albertini, Benedetti, and others, had taken over the function of payroll, and that despite his titles, Howe was not the person who was in any realistic position to choose which creditors would be paid. As was true of Klotz, the Government failed to prove more than negligence. The district court was not obliged to conclude that Howe's ignorance was contrived, as was the case in *Sorenson v. United States, supra,* 521 F.2d at 329.

## II

■ In pertinent part, 42 U.S.C. § 1988 provides: "[I]n any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code . . . the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Klotz contends that he was entitled to recover his attorney's fees under section 1988. The Government responds that the statute is inapplicable because Klotz, rather than the Government, brought the action, and the existence of the Government's counterclaim for $25,000 was of no statutory moment.

We agree with the Eighth Circuit in *Patzkowski v. United States* (8th Cir. 1978) 576 F.2d 134, that the Government's filing of a counterclaim to a taxpayer's suit for a refund permits the taxpayer to invoke section 1988 in seeking to recover attorney's fees incurred in defending the Government's section 6672 claim. ("The fact that the taxpayer had originally filed a refund suit did not change the reality of the ensuing proceeding, in which he was required to defend against a governmental counterclaim. [footnote omitted]." 576 F.2d at 136.)

■ Klotz unquestionably was a prevailing party. The district court denied attorney's fees on the ground that Klotz had failed to carry his burden of establishing that the Government's counterclaim was brought "in bad faith or in a frivolous or vexatious manner or that the counterclaim was brought for the purpose of harassment." We decline the Government's invitation to address the question whether section 1988 requires governmental bad faith because that issue is unnecessary to our decision. We agree with the district court that the taxpayer had the burden at least of establishing that the Government's counterclaim was "frivolous or vexatious." Neither label can be attached to the counterclaim in this case. (*Cf. Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648.)

■ Klotz and Howe invoked the same statute seeking to recover attorneys' fees on this appeal. We exercise our discretion in denying attorneys' fees to both. We recognize that there may be appeals by the Government based only on challenges to the district court's factual findings that are so flimsy as to warrant the frivolous characterization. The Government's appeal in this case had more substance than that.

AFFIRMED.