**GENERAL INVESTMENT CORPORATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Nos. 85–2604, 86–1652.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1987.

Decided July 29, 1987.

---

James Benham (Yale F. Goldberg, of counsel), Phoenix, Ariz., for appellee.

Michael J. Roach, Washington, D.C., for appellant.

Before ANDERSON, SKOPIL, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This appeal concerns a small mining company that, like others in its county, treated its workers as independent contractors for tax purposes. Two questions are before us. First, whether such treatment was justified under § 530(a)(2)(C) of the Revenue Act of 1978, 26 U.S.C. § 3401 note (1979), as undertaken in reliance on a "long-standing recognized practice of a significant segment of the industry." Second, for a later tax year to which § 530 cannot be applied, whether the workers in fact qualify as independent contractors under the common law. We conclude that the treatment was justified under the statute, but not under the common law.

## BACKGROUND

The taxpayer-appellee, General Investment Corporation (GIC), is an Arizona corporation engaged in gold and silver mining in Gila County, Arizona. GIC took over operations at the Sunflower Mine site in 1973, following twenty-five years' operation by GIC's predecessor. GIC hired laborers to mine, transport ore, and to maintain the mine, the ore milling site, and mining equipment.

GIC provided the majority of tools, equipment, and supplies required for blasting, transporting, and milling of ore. Blasting and mining was done by a daily three-person crew, which would usually produce 20–25 tons of ore. Workers were treated as independent contractors for tax purposes, but they earned a daily flat-rate

wage, which did not fluctuate according to productivity. GIC's president and principal officer, James Duncan, visited the mine daily to assure that mining practices complied with the federal Mine Safety and Health Act (MSHA).

Most of the workers were undocumented Mexican nationals, for whom GIC provided living quarters in its mining camp. While certain rules applied to conduct in the camp, it appears that GIC did not exercise detailed supervision over the daily work. Evidently, the miners themselves organized the taskwork required to extract and transport ore from the mine-tunnel rock face.

After a tax examination, the Internal Revenue Service (IRS) determined that the miners were employees. The IRS assessed a total of $82,950.67 for unpaid withholding, Federal Insurance Contribution Act (FICA), and Federal Unemployment Tax Act (FUTA) taxes for 1976–79, together with penalties for failure to file employment tax returns and failure to withhold. GIC paid $100 in taxes and sought a refund in the district court. The government counterclaimed for $108,975.98 in unpaid FICA, FUTA, and income taxes, along with penalties and interest.

At trial, GIC's president testified that local miners did not wish to have their taxes withheld. Evidence supported the inference that, because laborers were hired as independent contractors by other small mines in Gila County, the miners would be unwilling to work as regular employees for the Sunflower Mine. The district court concluded that GIC had a reasonable basis for treating its workers as independent contractors within the meaning of the safe haven provisions of § 530, as well as under traditional common law standards. The court therefore entered judgment for GIC and ordered refund of GIC's payments, dismissing the counterclaim. The government appeals.

## DISCUSSION

### I. SECTION 530 OF THE REVENUE ACT OF 1978; TAX YEARS 1976–78

The IRS contends that the district court committed legal error in applying § 530's "industry practice" provision. In § 530(a)(1), Congress granted interim relief from withholding and other forms of employer tax liability for certain taxpayers before 1980. 26 U.S.C. § 3401 note.[1] The statute was designed to relieve employers of the burden of surprise or uncertain imposition of retroactive tax liability resulting from an increase in IRS employment-status audits. *See, e.g.,* S. Rep. No. 1263, 95th Cong., 2d Sess. 209–10, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6761, 6972–73.

Congress provided that an individual whom the employer did not treat as an employee would be "deemed not to be an employee" for tax purposes "unless the employer had no reasonable basis" for that treatment of the individual. § 530(a)(1)(A) & (B). Section 530(a)(2) provides that an employer's reasonable reliance on any of three supporting elements constitutes a reasonable basis for not treating an individual as an employee.[2] The third provision,

---

1. Section 530(a) provides:
   **Termination of certain employment tax liability.—**
   (1) In general.—If—
   (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and
   (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be ·filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,
   then for purposes of applying such taxes for such period with respect to the taxpayer, the

individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.
26 U.S.C. § 3401 note (1979).

2. Section 530(a)(2) provides:
   **Statutory standards providing one method of satisfying the requirements of paragraph (1).—**For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

in dispute here, creates a conclusive presumption that an employer had a reasonable basis for not treating an individual as an employee, if the employer did so in reasonable reliance on "long-standing recognized practice of a significant segment of the industry in which such individual was engaged." § 530(a)(2)(C), 26 U.S.C. § 3401 note.

The government challenges the district court's application of § 530 on two fronts. First, it contends that the court's definition of the relevant industry was overly narrow; the government argues that the court should have required GIC to have relied on practices of a significant segment of the nationwide industry of mining. Second, the government claims that even if the court was correct to regard small Gila County mining concerns as a discrete industry for purposes of § 530, the court clearly erred by finding that plaintiff met its evidentiary burden.

*A.  The Scope of the Relevant Industry*

■ To escape tax liability through § 530(a)(2)(C), GIC must show that a "significant segment of the industry" treated miners as independent contractors. The government argues that the industry in which the workers were engaged should be defined to include *all mining businesses* nationwide. At a minimum, however, the government suggests that the standard should include all small mining concerns in the nation that process and extract ore. We disagree with both of these positions.

Section 530 of the Revenue Act of 1978 does not define "industry." Nor does the Act's extensive legislative history shed light directly on how Congress intended the term to be construed. Congress' overall purpose in passing the legislation does offer some guidance, however.

Without question, Congress intended to protect employers who exercised good faith

in determining whether their workers were employees or independent contractors. Section 530(a)(2)(C) is but one way for an employer to prove it had a "reasonable basis" for not treating its workers as employees for tax purposes. Rev. Proc. 78–35 § 3.01, 1978–2 C.B. 536. The legislative history specifies that "reasonable basis" is to be "construed liberally in favor of taxpayers." H.R.Rep. No. 1748, 95th Cong., 2d Sess. 5, 1978–3 C.B. (Vol. 1) 629, 633; *see American Institute of Family Relations,* 79–1 U.S.T.C. (CCH) ¶ 9364 (C.D.Cal. 1979). The IRS has embraced Congress' liberal construction directive in its procedural guidelines for § 530. Rev. Proc. 78–35 § 3.01, 1978–2 C.B. 536; *see Ridgewell's, Inc. v. United States,* 228 Ct.Cl. 393, 655 F.2d 1098 (1981).

■ To require the district court to examine nationwide mine employment practices would be cumbersome, and to demand such a showing by a small operator like GIC would thwart congressional intent. Several dozen small mining concerns with operations similar to the Sunflower Mine exist in Gila County, a geographic area covering 4,400 square miles. The government fails to provide any substantial reason why these small Gila County metallic mineral mines should not be viewed as a discrete industry sufficient to stimulate the kind of reliance protected by § 530. In light of the provision's curative, "remedial character which responded to peculiar circumstances of past deficiencies in the [IRS'] enforcement ... of the employment tax laws," *Donovan v. Tastee Freez (Puerto Rico), Inc.,* 520 F.Supp. 899, 904 (D.P.R. 1981), we conclude that the district court appropriately interpreted § 530.

*B.  Evidence of Industry Practice*

The government alternatively contends that the district court erred by finding that

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals

holding positions substantially similar to the position held by this individual; or
(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.
26 U.S.C. § 3401 note.

the hiring of miners as independent contractors was a recognized practice among a significant segment of the Gila County small mining industry.[3] We review the district court's finding for clear error. *E.g., LaDuke v. Nelson,* 762 F.2d 1318, 1321 (9th Cir.1985), *amended,* 796 F.2d 309 (9th Cir.1986); *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

At trial, both Duncan and Thorne, another local mine operator, testified that they always hired laborers as independent contractors. Duncan testified that GIC's practice of contracting for laborers followed the routine practice of the Sunflower Mine's previous owner. Duncan and Thorne also had extensive familiarity with the operations of a number of other small Gila County mines through their roles as officers of a county-wide mining trade association. Their impression, based on meetings with mine owners and numerous visits to other mines, was that all hired laborers on as independent contractors. Duncan also testified that workers who had experience working for other mines were unwilling to work for GIC unless they were treated as contract laborers, because their wages would be lower as employees.

Cross-examination revealed that substantial portions of GIC's evidence were not based on direct personal observation. The government did not move to strike the testimony, however, and that evidence remains part of the record.[4] The government cannot now complain that such evidence should be excluded from consideration. *See United States v. Fernandez,* 772 F.2d 495, 499 (9th Cir.1985) (citing *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.,* 727 F.2d 1470, 1472 (9th Cir.1984); *United States v. Jamerson,* 549 F.2d 1263, 1266–67 (9th Cir.1977)). Although some of the testimony was hearsay, the district court properly considered it for its probative value. *Id.*

The government failed to present any evidence of employment practices that cast doubt on GIC's evidence. Moreover, circumstantial nonhearsay evidence supported GIC's assertion that the use of contract laborers was a routine practice among small gold and silver mines in Gila County. The district court did not clearly err in concluding that the treatment of laborers as independent contractors was a long-standing, recognized practice of a significant segment of the industry. Thus, GIC had a reasonable basis for treating its miners as independent contractors and is relieved of liability for the years 1976–78. § 530(a)(2)(C), 26 U.S.C. § 3401 note.

## II. COMMON LAW EMPLOYMENT STANDARDS; TAX YEAR 1979

GIC cannot avail itself of § 530 relief to avoid employment tax liability for 1979. For tax periods after December 31, 1978, relief under § 530 is available only if GIC filed required tax or information returns. § 530(a)(1), 26 U.S.C. § 3401 note.[5] GIC conceded that it failed to file information returns for its 1979 workers and is not entitled to § 530 relief for that year.

Measuring the workers' status by applicable common law standards, *see* 26 U.S.C. §§ 3121(d)(2) & 3306(i), the district court concluded that GIC also escaped employment tax liability for 1979. The government challenges this conclusion. We review for clear error the court's finding that GIC's laborers were not common law employees. *E.g., McGuire v. United States,* 349 F.2d 644, 646 (9th Cir.1965).

Although a variety of factors may be used to analyze employment status for tax purposes, employer control over the manner in which the work is performed, "either actual or the right to it, is the basic test." *Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 579 (8th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 228, 38

---

3. GIC need not prove the practice was uniformly followed by the industry. Rev.Proc. 78–35 § 3.01(C), 1978–2 C.B. 536.

4. The government successfully objected to the introduction of other testimony, which the district court excluded on hearsay grounds.

5. *See supra* note 1.

L.Ed.2d 146 (1973); *McGuire,* 349 F.2d at 646. The Treasury Regulations include the following subsidiary factors to define common law employment status: (1) whether the business has the right to discharge the worker; (2) whether the business furnishes tools to the person rendering the service; (3) whether the business provides the worker with a place to work; and (4) whether the work is performed in the course of the individual's business rather than in some ancillary capacity. *See* Treasury Regulations on Employment Tax & Collection of Income Tax at Source, 26 C.F.R. §§ 31.-3121(d)–1(c)(2), 31.3306(i)–1(b), 31.-3401(c)(1)(b) (1987).

Trial testimony established that Duncan, as president of GIC, hired and discharged the workers. There was no indication that the laborers had their own independent businesses, although some also worked for neighboring mines. The jobs did not require sophisticated skills, and GIC provided most of the tools and all heavy equipment. Duncan selected daily crew members, provided safety training, and established strict rules governing conduct in the mining camp. The miners were unable to earn more than the daily flat-rate wage through their skill, management abilities, or efficiency. *See, e.g., Avis Rent A Car System, Inc. v. United States,* 503 F.2d 423, 429 (2d Cir.1974) (listing factors to be considered in determining whether employer-employee relationship exists) (cited in *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748, 754 n. 14 (9th Cir.1979); *Smith v. United States,* 75–2 U.S.T.C. (CCH) ¶ 9793 (N.D.Tex.1975) (mem.), *aff'd per curiam,* 568 F.2d 435 (5th Cir.1978).

■ GIC did not exercise control over every detail of the work, and GIC contends that payment was on a piecework basis. On the record before us, however, we cannot conclude that Duncan lacked the *right* to control his laborers. The mere fact that the workers set their own hours and determined when to take breaks did not make them independent contractors. *United States v. Silk,* 331 U.S. 704, 716–18, 67 S.Ct. 1463, 1469–70, 91 L.Ed. 1757 (1947).

The district court clearly erred by finding that GIC demonstrated that its miners were independent contractors. Since common law standards determine the employment status of GIC's workers for 1979, GIC is liable for taxes, penalties, and interest in accordance with the IRS assessment for that year.

## III. LITIGATION COSTS

■ GIC, as cross-appellant, appeals the district court's denial of litigation costs under 26 U.S.C. § 7430. GIC may only qualify for award of reasonable costs if it was a "prevailing party" within the meaning of § 7430(c)(2)(A). *See* 26 U.S.C. § 7430(a). A prevailing party must establish that the position of the United States was not substantially justified. *Id.* § 7430(c)(2)(A)(i). The district court did not abuse its discretion in concluding that GIC failed to make the necessary showing. *Cf. Albrecht v. Heckler,* 765 F.2d 914, 915 (9th Cir.1985) (per curiam) (reviewing for abuse of discretion district court's ruling on application for fees under Equal Access to Justice Act, 28 U.S.C. § 2412(d)); *Cardwell v. Kurtz,* 765 F.2d 776, 781–82 (9th Cir.1985) (same). We therefore affirm the court's decision to deny GIC's application for litigation costs.

## CONCLUSION

On the authority of § 530 of the Revenue Act of 1978, we affirm the district court's dismissal of the government's counterclaim for taxes, penalties, and interest for 1976–78. Because GIC's workers were common law employees, we reverse the district court's decision as to plaintiff's liability for 1979 and remand for further proceedings consistent with this opinion. Each party will bear its own costs.

AFFIRMED AS TO 1976–78; REVERSED AND REMANDED AS TO 1979.