36 F.3d 1102
 74 A.F.T.R.2d 94-6372
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CROWD MANAGEMENT SERVICES, INC., an Oregon Corporation;
James Deloretto, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
CROWD MANAGEMENT SERVICES, INC., an Oregon Corporation;
James Deloretto, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 92-36726, 92-36776.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1994.
Filed June 1, 1994.
Vacated Sept. 6, 1994.
Decided Sept. 6, 1994.
 
 Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.
 ORDER
 Crowd Management Service, Inc., and James DeLoretto have requested that this court reconsider and modify the memorandum disposition filed on June 1, 1994. That request is granted. The memorandum disposition filed on June 1, 1994 is vacated. The attached memorandum disposition is ordered filed concurrently with this order.
 Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Government appeals from the judgment entered in favor of Crowd Management Services, Inc. ("Crowd") and James DeLoretto ("DeLoretto"), the denial of its motion for judgment as a matter of law, and the denial of its motion for a new trial. The Government contends that the evidence was legally insufficient to support the jury's conclusion that the persons who performed services for Crowd were independent contractors. The Government also asserts that the district court erroneously permitted the jury to hear prejudicial evidence concerning the issue of damages. Crowd and DeLoretto cross-appeal from the court's denial of their claims for damages pursuant to 26 U.S.C. Secs. 7432 and 7433, the court's denial of attorney's fees pursuant to 26 U.S.C. Sec. 7430, and the court's denial of their motion for a jury trial.
 
 
 3
 We reverse the judgment in favor of Crowd and DeLoretto. We hold that the evidence produced at trial is insufficient to demonstrate that the persons who performed services for Crowd were independent contractors. We remand for resolution of the remaining factual matters pertaining to the amount of tax owed by Crowd and DeLoretto. We affirm the orders denying cross-appellants' claims for damages, attorney's fees, and their motion for a jury trial concerning damages. We do not reach the merits of the order denying the Government's motion for a new trial, or the alleged prejudicial impact on the jury of the district court's evidentiary rulings, because these issues are moot.
 
 I.
 
 4
 The Government argues that the evidence produced at trial was legally insufficient to demonstrate that Crowd's workers were independent contractors. We review de novo the denial of a motion for a judgment as a matter of law to determine if the verdict is supported by substantial evidence. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 113 S.Ct. 815 (1992).
 
 
 5
 The determination of employment status requires an examination of a variety of factors as set forth in case law and Internal Revenue Service Regulations. See Rev.Rul. 87-41, 1987-1 C.B. 296 (setting forth "20 factor common law test" to determine employment status). The most significant factor is the extent to which an employer has control over the manner in which work is performed. General Inv. Corp. v. United States, 823 F.2d 337, 341 (9th Cir.1987). Additional factors which are relevant in this matter include the opportunity to profit from management ability, the extent to which special skills are required, the amount of investment in work-related equipment, whether the worker's services are integral or ancillary in the course of the employer's business, and whether the work is permanent and full-time. We discuss each of these factors under separate headings.
 
 A. Control Over Work
 
 6
 The Government contends that the extent to which Crowd had control over the manner in which the worker's performed their services demonstrates that they were employees. Prior to each event involving services provided by Crowd, a supervisor from the company distributed work-related materials to the workers. The supervisor also instructed the workers regarding the areas they were responsible for securing and the tasks they were to perform at a given location. Normally, Crowd provided one supervisor for every six to ten workers. The supervisors made regular rounds during the event to monitor the performance of the workers. On cross-examination, DeLoretto admitted with regard to the workers that "[w]e required that they follow the guidance [given by the supervisors]." DeLoretto further testified that a supervisor could tell a worker that "[t]his is not the stairway you are guarding. You are guarding open space. Guard the stairway. They can make the assumption you are not doing your job and we wanted the job done."
 
 
 7
 Crowd contends the evidence demonstrated that the workers were independent contractors because the workers were not told how to perform the details of their job. Rather, the workers were free to perform their services as they chose because Crowd was only concerned about the end result and not the means selected. We disagree.
 
 
 8
 The record clearly establishes that the workers were provided with all necessary supervision. The mere fact that they were not told specifically what to do each minute they were at the job site does not demonstrate that the workers were independent contractors. See United States v. Silk, 331 U.S. 704, 718 (1947) (employee status determined in part by the fact that the employer was in a "position to exercise all necessary supervision over their simple tasks"); General Inv. Corp., 823 F.2d at 342 (the fact that the employer "did not exercise control over every detail of the work" does not preclude employee status since employer had right to control workers). The evidence of supervision demonstrates that the workers were employees.
 
 
 9
 B. Opportunity to Profit or Incur Loss From Management Skills
 
 
 10
 The Government contends that the fact that workers were unable to profit from the use of their management skills demonstrates that they were employees. Crowd's workers were paid an hourly wage. There was no evidence that they were eligible for payment of a bonus or any sum in excess of the hourly wage. This payment scheme is similar to that provided the miners in General Inv. Corp., who "were unable to earn more than the daily flat-rate wage through their skill, management abilities, or efficiency," General Inv. Corp., 823 F.2d at 342, the car shuttlers in Avis, who "had no opportunity to profit by their management skills," Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 430 (2d Cir.1974), and the coal unloaders in Silk, who "had no opportunity to gain or lose except from the work of their hands." Silk, 331 U.S. at 717. In each of these decisions, the reviewing court concluded that the worker's were employees. Crowd's workers were unlike the truck drivers in Silk who were considered independent contractors in part because they had the ability to receive a bonus if their work was satisfactory. Id. at 709.
 
 
 11
 Crowd argues that it was possible for the workers to suffer a financial loss if events were cancelled or equipment was destroyed and needed replacement. This possibility is no different from that faced by employees who must pay for their own commuting costs and work clothes. Furthermore, the losses that a Crowd worker may incur when an event is cancelled due to bad weather are not attributable to the worker's management skills. Therefore, this factor weighs in favor of classifying Crowd's workers as employees.
 
 C. Special Skills
 
 12
 The Government contends that the workers were employees because they were not required to provide special skills to perform their jobs. Approximately 80 to 90% of peer security workers are college students who seek occasional employment. Crowd did not seek workers who had any particular skills or talents because the nature of the job did not require it. In this regard, the workers are similar to the employees in General Inv. Corp. 823 F.2d at 342 (miners did not require special skills), and Avis, 503 F.2d at 430 (car shuttlers brought no special skills to their job). This factor would support a finding that Crowd's workers were employees.
 
 D. Investment in Equipment
 
 13
 The Government contends that the workers were employees because they were not required to invest more than a minimal amount of money to purchase equipment and supplies. The evidence demonstrates that Crowd's workers were required to spend an insignificant amount of money to purchase equipment which was used in the performance of their jobs. They were required to provide a flashlight at a cost of approximately two dollars. One worker testified that he ripped a pair of pants at an event which cost $65.00 to replace. Another worker testified that he had to buy different types of pants depending upon the nature of the event. The absence of a requirement that a worker furnish tools or equipment necessary to perform the job was recognized by the Court in Silk as demonstrating employee status for coal unloaders. Silk, 331 U.S. at 717. In Silk, the Court concluded, however, that the drivers, who were responsible for expenses relating to the maintenance of their trucks, were independent contractors. Id. at 719. Lack of investment in equipment was also cited by the courts in General Inv. Corp., 823 F.2d at 342, and Avis, 503 F.2d at 430, as demonstrating that the workers were employees.
 
 
 14
 E. Integration of Worker's Services into Business
 
 
 15
 The Government contends that the workers were employees because they performed tasks directly related to Crowd's business, controlling persons at special events, rather than in an ancillary capacity. DeLoretto testified during cross-examination that furnishing the workers to provide security was an integral part of crowd control. The fact that an individual performs services in the course of another's business supports a finding that the individual is an employee and not an independent contractor. See General Inv. Corp., 823 F.2d at 342 (work performed in the course of another's business, as opposed to work performed in an ancillary capacity, is a factor in favor of employee status); Avis, 503 F.2d at 429 (same).
 
 F. Permanence and Full-Time Work
 
 16
 Crowd contends that the workers were independent contractors because the company maintained a temporary relationship with them. This contention is contrary to the Second Circuit's determination that the existence of a temporary relationship between Avis and its car shuttlers did not demonstrate that the shuttlers were independent contractors. Avis, 503 F.2d at 430. In this regard, the court analogized car shuttlers to the coal unloaders in Silk, who worked on a day-to-day basis. Id.
 
 
 17
 In sum, we find that the evidence in the record is insufficient as a matter of law to sustain the jury's verdict that the crowd control workers should be classified as independent contractors. Therefore, the district court erred in denying the Government's motion for judgment as a matter of law. In light of our holding, we need not decide whether the district court abused its discretion by denying the Government's motion for a new trial, and permitted the jury to hear testimony concerning the alleged injury to DeLoretto. Furthermore, since we reverse the jury's verdict in favor of Crowd and DeLoretto, their claims for attorney's fees must be rejected because they did not substantially prevail against the Government. See Huffman v. Commissioner, 978 F.2d 1139, 1147 (9th Cir.1992) (taxpayer is entitled to attorney's fees if he substantially prevails with respect to the amount in controversy or the most significant issue or issues presented).
 
 II.
 
 18
 In his amended complaint, DeLoretto sought damages pursuant to 26 U.S.C. Sec. 7432 on the basis that the Government failed to release the tax lien filed against him. The relevant provision of the statute provides as follows:
 
 
 19
 If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.
 
 
 20
 26 U.S.C. Sec. 7432(a). Section 6325, which is referred to in section 7432, states, in pertinent part:
 
 
 21
 (a) Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the date on which--
 
 
 22
 (1) The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable.
 
 
 23
 26 U.S.C. Sec. 6325(a)(1).
 
 
 24
 DeLoretto advances several arguments with regard to his claim for damages under section 7432: (1) the trial court erroneously determined that section 6325 requires that the IRS release a lien only when the amount assessed is legally unenforceable; (2) the assessment relating to the lien against DeLoretto was invalid because the IRS failed to establish that DeLoretto acted willfully; and (3) it was not necessary that he present evidence demonstrating that the Secretary was aware of the invalidity of the tax lien. Because we hold that section 6325 requires the release of a lien only when the amount assessed becomes legally unenforceable, we do not decide whether DeLoretto acted willfully or whether he was required to establish that the Secretary was aware of the invalidity of the lien.
 
 
 25
 DeLoretto maintains that the trial court erroneously concluded that section 6325 requires release of a lien only when the amount assessed has become legally unenforceable. He contends that the court's interpretation would provide no relief to a taxpayer against whom a lien was improperly asserted as long as the underlying assessment is not invalid. Therefore, DeLoretto contends that a lien should be released when the lien itself and not just the underlying assessment becomes unenforceable. We review a district court's interpretation of a statute de novo. Anderson v. United States, 966 F.2d 487, 489 (9th Cir.1992).
 
 
 26
 DeLoretto's contention that a lien must be released if it is legally unenforceable is contrary to the plain language of section 6325. The statute specifically requires that the IRS release a lien when the "liability for the amount assessed ... has become legally unenforceable." Section 6325(a)(1) (emphasis added). In order to obtain damages under section 7432, DeLoretto is required to demonstrate that the amount assessed is legally unenforceable.
 
 
 27
 DeLoretto argues that the assessment of the 100% penalty under 26 U.S.C. Sec. 6672 was invalid because the Government failed to demonstrate that DeLoretto acted willfully. The relevant portion of section 6672 states that
 
 
 28
 [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
 
 
 29
 26 U.S.C. Sec. 6672(a).
 
 
 30
 For the purpose of interpreting section 6672, willfulness is defined as a "voluntary, conscious and intentional act to prefer other creditors over the United States." Davis v. United States, 961 F.2d 867, 871 (9th Cir.1992) (internal quotation omitted), cert. denied, 113 S.Ct. 969 (1993). Willfulness does not require that the Government demonstrate "an intent to defraud or even the existence of a bad motive." Klotz v. United States, 602 F.2d 920, 923 (9th Cir.1979). The failure to pay taxes under section 6672 must merely be "voluntary, knowing and intentional." Barnett v. United States, 594 F.2d 219, 222 (9th Cir.1979).
 
 
 31
 DeLoretto argues that the tax lien became legally unenforceable when the district court entered judgment in his favor regarding the employment status issue. Contrary to DeLoretto's position, because this case has been appealed, the district court's entry of judgment does not require the Government to release the tax lien since the judgment was not enforceable at the time the appeal was initiated. See In re Thorp, 655 F.2d 997, 998 (9th Cir.1981) (once a notice of appeal is filed, the district court is without jurisdiction to enforce its judgment until the issuance of a mandate from this court). Therefore, DeLoretto is not entitled to damages because no showing has been made that the Government was obligated to release the lien.
 
 III.
 
 32
 DeLoretto also contends that the judgment denying him damages pursuant to 26 U.S.C. Sec. 7433 must be reversed because (1) the district court clearly erred in holding that the IRS did not act recklessly or intentionally by failing to provide 60 days notice before placing the lien on his property, (2) the district court erred when it held that failure by the IRS agent to apply the common law test to determine employment status did not violate the statute, and (3) the district court clearly erred when it found that the IRS did not recklessly impose the 100% penalty under section 6672. Section 7433 states in relevant part:
 
 
 33
 (a) If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.
 
 
 34
 (b) In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $100,000 or the sum of--
 
 
 35
 (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional actions of the officer or employee, and
 
 
 36
 (2) the costs of the action.
 
 
 37
 26 U.S.C. Sec. 7433.
 
 
 38
 A. Filing Lien Without Providing 60 Days Notice
 
 
 39
 There is no dispute that the IRS did not provide DeLoretto with 60 days notice of the penalty assessment before filing its lien. The Government acknowledges that "DeLoretto first received official notice of the penalty assessment from the IRS on October 25, 1990, when the IRS faxed a copy of the notice and demand form to the office of one of his attorneys." Appellant's Reply Brief at 36. The lien was filed by the IRS against DeLoretto on October 22, 1990.
 
 
 40
 The district court held that DeLoretto failed to prove that the Government's failure to provide the 60 day notice was either intentional or reckless. Rather, the court found that the failure to send the notice was merely negligent or inadvertent. The court credited the testimony of IRS Agent Dennis Guffey that "the notice and demand was usually sent to the taxpayer through the IRS automated computer system in Ogden, Utah, and [he] had assumed DeLoretto had received such." We review a district court's factual findings for clear error. Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 
 41
 DeLoretto contends that the IRS was reckless because Agent Guffey, the responsible agent, was informed prior to the time when the IRS imposed the tax lien that DeLoretto had not received the notice and demand for the assessment. DeLoretto further contends that Agent Guffey's imposition of the lien with this knowledge and after promising not to take collection actions until the underlying liability was resolved "shows an intentional and flagrant disregard for and violation of the statutes."
 
 
 42
 DeLoretto mischaracterizes Guffey's testimony. The record reflects the following colloquy during the cross-examination of Agent Guffey by DeLoretto's trial counsel:
 
 
 43
 Q. Well, isn't it true, Mr. Guffey, that you promised Mr. Green no collection action would be taken while you were in these negotiations?
 
 
 44
 A. I don't remember exactly saying that.
 
 
 45
 Q. Well, words to that effect, Mr. Guffey, we are looking for. We are not--
 
 
 46
 A. I understand what you are saying. I just you know, with the passage of time exactly I just don't remember. But that would be normal for me to say such.
 
 
 47
 The record further indicates that both Agent Guffey and Revenue Officer Glenda Hill, who prepared the section 6672 assessment, assumed the proper notice and demand had been sent. While the agents may have been negligent because they failed to take any action to ascertain whether a notice and demand had been sent to DeLoretto, DeLoretto has failed to demonstrate that this nonfeasance was intentional or reckless.
 
 
 48
 The record does demonstrate that DeLoretto's attorney had informed Agent Guffey that DeLoretto did not receive notice of the assessment prior to the filing of the lien. Agent Guffey testified, however, that "more times than not the paperwork has either been ignored or lost. When--it is a common thing for a taxpayer to say, I don't know." Guffey further explained, "quite frankly, that is what I thought the thing was in this case, is that Mr. Green [DeLoretto's attorney] just hadn't gotten the paperwork." In fact, Agent Guffey testified that at the time of the trial, he still did not know if the notice and demand had been mailed. There is ample evidence in the record to support the district court's finding that the conduct of the IRS agents in failing to send the notice and demand prior to filing the lien was not intentional or reckless.
 
 
 49
 B. Alleged Failure of Agent Armony to Apply the Common Law Test
 
 
 50
 DeLoretto contends that 26 U.S.C. Sec. 3121(d)(2) requires the IRS to apply the common law test to determine whether Crowd's workers were employees or independent contractors. He further argues that the district court's finding that Agent Armony applied the common law test is erroneous. DeLoretto asserts that Agent Armony's failure to apply the common law test compelled a judgment in his favor pursuant to section 7433.
 
 
 51
 Contrary to DeLoretto's assertion, the record indicates that Agent Armony applied the common law test. Agent Armony testified that he used the "20 common law interview form that was prepared" during his evaluation. The district court's finding that Agent Armony applied the common law test is not clearly erroneous.
 
 
 52
 C. Government's Alleged Failure to Investigate Willfulness Requirement Under Section 6672
 
 
 53
 DeLoretto contends that the Government recklessly imposed a 100% penalty pursuant to section 6672 without investigating whether DeLoretto willfully failed to collect or pay withholding taxes. The Government contends that the "IRS's activities in connection with the determination of DeLoretto's liability under Section 6672, however, were in connection with the determination, not the collection, of a tax, and hence, not actionable under Section 7433." According to the Government, "[s]ection 6672 does not render responsible persons directly liable for the unpaid withholding taxes. Rather, it imposes a 'penalty' on responsible persons 'equal to the total amount' of the unpaid taxes.... That penalty is treated as a tax for purposes of the Code." This issue presents a question of law which we review de novo. See Anderson v. United States, 966 F.2d 487, 489 (9th Cir.1992).
 
 
 54
 We reject the Government's position. The purpose of section 6672 is to ensure that taxes are collected. See Slodov v. United States, 436 U.S. 238, 248 (1978) (section 6672's purpose is to "assure payment of withheld taxes"); Davis v. United States, 961 F.2d 867, 872 (9th Cir.1992) ("Section 6672 promotes the full collection of taxes."), cert. denied, 113 S.Ct. 969 (1993).
 
 
 55
 The district court found that "there is no evidence that Agent Armony did not make a willfulness investigation." The district court's finding is reviewed for clear error. See Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 
 56
 DeLoretto argues that the district court's finding is clearly erroneous because Agent Armony, in conducting his audit, had the authority to impose a "negligence penalty" under the IRS code but chose not to. DeLoretto reasons that if Agent Armony concluded that DeLoretto did not act negligently, he could not have acted willfully. DeLoretto cites our decision in United States v. Leuschner, 336 F.2d 246, 248 (9th Cir.1964), in support of his argument.
 
 
 57
 Leuschner involved the appropriateness of a penalty assessment for willful failure to pay taxes. Id. at 246-47. We found that the evidence demonstrated that Leuschner's conduct was negligent, and not willful. Id. at 248. See also Cooke v. United States, 796 F.Supp. 1298, 1305 (N.D.Cal.1992) (mere negligence is not sufficient to constitute willfulness for the purpose of imposing a section 6672 penalty). DeLoretto's argument mischaracterizes the relationship between negligence and willfulness. Negligence represents a different mental state than willfulness. The mere fact that an individual has not acted negligently does not compel a conclusion that the individual has not acted intentionally. Agent Armony's determination that DeLoretto was not subject to a negligence penalty does not demonstrate that DeLoretto's conduct was not willful.
 
 
 58
 Agent Armony testified as to the basis for his belief that DeLoretto was subject to a willfulness penalty. DeLoretto did not produce any evidence which demonstrates that Agent Armony failed to perform a willfulness investigation.
 
 IV.
 
 59
 DeLoretto contends that the district court erroneously held that he was not entitled to a jury trial concerning his claims for damages under 26 U.S.C. Secs. 7432 and 7433. This issue concerns the interpretation of a statute and is reviewed de novo. See Anderson v. United States, 966 F.2d 487, 498 (9th Cir.1992).
 
 
 60
 The relevant statutes which govern the resolution of this issue are 28 U.S.C. Secs. 2402 and 1346(a)(1). Section 2402 states that
 
 
 61
 [a]ny action against the United States under section 1346 shall be tried by the court without a jury, except that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury.
 
 
 62
 28 U.S.C. Sec. 2402. Section 1346(a)(1) states that
 
 
 63
 [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.
 
 
 64
 28 U.S.C. Sec. 1346(a)(1).
 
 
 65
 DeLoretto argues that his claims under 26 U.S.C. Secs. 7432 and 7433 "sought recovery of taxes erroneously and illegally assessed and wrongfully collected [and] a jury trial is available under 28 U.S.C. Sec. 2402 and 28 U.S.C. Sec. 1346(a)(1)." DeLoretto states that "[i]t is instructive to note that 26 U.S.C. Sec. 7426 and Sec. 7428, which both provide for taxpayer rights against the IRS are specifically mentioned in 28 U.S.C. Sec. 1346(3) [sic].... The effect of this is to provide for original jurisdiction in the federal courts for claims under those statutes, but to deny the right to a jury trial for such claims because 28 U.S.C. Sec. 2402 only provides a jury trial for claims falling under 28 U.S.C. Sec. 1346(a)(1)." DeLoretto reasons that because "Sec. 1346(e) has not been amended to add Sec. 7432 and Sec. 7433 ... those statutes are covered by Sec. 1346(a)(1)," and therefore he is entitled to a jury trial.
 
 
 66
 DeLoretto's argument is contrary to established law regarding actions filed against the United States Government. As the Supreme Court has instructed, "[i]t has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." Lehman v. Nakshian, 453 U.S. 156, 160 (1981). Instead, "the United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court defines that court's jurisdiction to entertain the suit." Id. (internal quotation omitted). In a suit against the Government, a plaintiff is entitled to trial by jury only if the "right is one of the terms of [the Government's] consent to be sued." Id. (internal quotation omitted). Any "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id. at 161 (internal quotation omitted).
 
 
 67
 DeLoretto's position is inconsistent with the Lehman Court's mandate to strictly observe the limitations and conditions upon which the Government may be sued and forbidding the implication of exceptions to this rule. Nothing in the language of section 1346(a)(1) permits a claim for damages under sections 7432 and 7433. As the Supreme Court explained in Lehman, the amount recoverable in a jury trial under section 1346(a)(1) is limited to the amount of taxes illegally or erroneously collected. Id. at 161-62 n. 8. Therefore, DeLoretto is not entitled to a jury trial regarding damages.
 
 V.
 
 68
 The district court erred in concluding that the evidence presented by Crowd and DeLoretto was sufficient to demonstrate that the crowd control workers were independent contractors. Accordingly, the judgment in favor of Crowd and DeLoretto is REVERSED. The order denying the Government's motion for judgment as a matter of law is VACATED. We REMAND for further proceedings to determine the amount of tax owed by Crowd and DeLoretto, and whether (1) the individual crowd control workers were in a substantially similar position to the workers that Crowd treated as employees prior to 1982, (2) Crowd had a reasonable basis for treating the workers in question as independent contractors, (3) Crowd intentionally disregarded the requirement that taxes be withheld from the wages of its employees, and (4) DeLoretto willfully failed to collect, account for and pay over the taxes which should have been withheld from the wages of Crowd's workers.
 
 
 69
 The Government's appeal from the order denying its motion for a new trial is DISMISSED as moot. The judgment of the district court is AFFIRMED with respect to Crowd and DeLoretto's claims for damages, attorney's fees, and a jury trial.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by the 9th Cir. R.36-3