T.C. Summary Opinion 2001-127


UNITED STATES TAX COURT


CHARLES R. CLARKE, d.b.a. MAXI'S TODAY'S HAIR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4627-98S.                    Filed August 17, 2001.


Charles R. Clarke, pro se.

Julie L. Payne, for respondent.


GOLDBERG, Special Trial Judge: This case is before the
Court on a petition for a redetermination of a Notice of
Determination Concerning Worker Classification Under Section
7436. The decision to be entered is not reviewable by any other
court, and this opinion should not be cited as authority. See
sec. 7436(c). Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
years in issue, and all Rule references are to the Tax Court

Rules of Practice and Procedure.

Respondent issued a Notice of Determination Concerning Worker Classification Under Section 7436 (notice of determination), in which respondent determined: (1) Ten individuals who performed services for Maxi's Today's Hair (Maxi's) during 1994, and four individuals who performed services for Maxi's during 1995 were employees of Maxi's for purposes of Federal employment taxes under subtitle C (Employment Taxes and Collection of Income Tax) of the Internal Revenue Code; (2) petitioner was not entitled to relief under subsection (a) of section 530 of the Revenue Act of 1978 (section 530), as amended,[1] Pub. L. 95-600, 92 Stat. 2763, 2885, see sec. 7436(a)(2); and (3) petitioner was liable for additions to tax under sections 6651(a)(1) and 6656(a).

Therefore, the issues in this case are: (1) Whether the beauticians identified in the notice of determination were common law employees of petitioner during 1994 and 1995; and, if so, (2) whether petitioner is entitled to section 530 relief from employment taxes stemming from the employment of the beauticians; and (3) whether petitioner was liable for additions to tax under sections 6651(a)(1) and 6656(a).

---

[1] Sec. 530 of the Revenue Act of 1978 has been amended by Pub. L. 96-167, sec. 9(d), 93 Stat. 1278; Pub. L. 96-541, sec. 1, 94 Stat. 3204; Pub. L. 97-248, sec. 269(c), 96 Stat. 552; Pub. L. 99-514, sec. 1706, 100 Stat. 2781; and Pub. L. 104-188, sec. 1122, 110 Stat. 1766.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Federal Way, Washington.

In January 1994, petitioner purchased a nonoperating beauty salon. Petitioner had no previous experience in owning or operating a beauty salon and had no training in cutting hair. Petitioner worked full time in the human resource department of a company located in Bellevue, Washington. The salon was approximately 1,100 square feet in area and was equipped with hairdressing stations, or chairs, and other fixtures, including equipment for shampooing and drying hair. At the time of purchase, the salon had no employees and was not open for business. In February 1994, petitioner hired the first beautician and thereafter opened for business. Petitioner advertised the salon's services in newspapers and on the radio. Maxi's provided services for clients who made appointments with a particular beautician or were walk-in customers. By the end of the first quarter of 1994; i.e., March 31, 1994, petitioner had hired three to four beauticians. Due to the high turnover in this type of business, petitioner had approximately 20 beauticians working in Maxi's during the years at issue, although

only 10 beauticians[2] worked for any substantial period.  All of the individuals listed in the notice of determination worked for Maxi's as beauticians for some period during 1994 and/or 1995.

During the first quarter of 1994, petitioner treated the beauticians working for him as employees; i.e., petitioner withheld Federal income taxes of $1,083.82.  Of these amounts, petitioner deposited $400.78 with the Government.  Petitioner did not file Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, or Form 941, Employer's Quarterly Federal Tax Return, for any period during the years at issue.  For the remaining 1994 tax year and for the entire 1995 tax year, petitioner did not withhold any Federal income taxes, including employment taxes[3] from amounts paid to the beauticians.  The former owner of the hair salon had treated beauticians working for the salon as employees for Federal tax purposes.

Petitioner's accountant, Fred C. Brents (Mr. Brents), prepared Forms W-2, Wage and Tax Statement, for beauticians

---

[2]     These beauticians are identified in the notice of determination.  Although the identity of beauticians named in the notice of determination, petitioner's payroll records, and the Forms W-2, Wage and Tax Statement, are inconsistent, petitioner does not contest the identity of these individuals listed in the notice of determination, and, therefore, we accept respondent's identification in the notice of determination.  See Rule 34(b)(5).

[3]     For convenience, the term "employment taxes" refers to taxes under the Federal Insurance Contributions Act (FICA), secs. 3101-3125, the Federal Unemployment Tax Act (FUTA), secs. 3301-3311, and income tax withholding, secs. 3401-3406 and 3509.

working at Maxi's during the first quarter of 1994.[4]  The Forms
W-2 were not forwarded to the Social Security Administration or
the Internal Revenue Service (IRS) by petitioner or Mr. Brents.
In addition, petitioner did not provide Forms 1099 reflecting
amounts paid to the beauticians during the years at issue.[5]

Petitioner learned from others in the business that renting
chairs to beauticians was a common practice.  Sometime during the
first quarter of 1994, petitioner and Mr. Brents spoke with a
representative of the State of Washington, Department of Labor
and Industry, which serves in an advisory capacity for small
businesses.  After reviewing information provided by the
Washington Department of Labor and Industry, Mr. Brents advised
petitioner that it was appropriate to treat the beauticians as
independent contractors.  Thus, beginning in the second quarter
of 1994, and throughout 1995, petitioner purportedly rented
chairs to the beauticians.  Although petitioner believed that all
hired beauticians were independent contractors, written "rental
agreements" were not offered to each beautician who provided

---

[4]    We note that the record contains seven separate 1994
Forms W-2 for employees, which conflicts with petitioner's
testimony that only the three or four beauticians hired during
the first quarter of 1994 were treated as employees.

[5]    Mr. Brents testified that the Forms 1099 were prepared
and furnished to each beautician; however, it was each
beautician's responsibility to submit his or her respective Form
1099 to the Internal Revenue Service (IRS) with his or her
Federal income tax return.  The purported Forms 1099 are not a
part of the record in this case.

services to petitioner.  A typical contract purportedly set a flat fee for rental of a chair; however, according to petitioner's records, chair rental amounts fluctuated month-to-month based upon the dollar amount of services rendered by each beautician.

Petitioner required beauticians to have a beautician license issued by the State of Washington prior to hiring.  He did not train or instruct beauticians how to cut or style hair. Petitioner provided all equipment and beauty supplies or products used by beauticians.  On occasion a beautician brought and used his or her own clippers, combs, brushes, etc.; however, it was not required for a beautician to supply these items.  If a beautician modified a work station, petitioner would bear the costs of such modification.

Petitioner set the base fee for all services provided by the beauticians.  Beauticians were required to use a common cash register and to submit daily reports showing the fees collected during the day.  All credit card and check payments for services, regardless of which beautician provided the services, were payable to "C&M Enterprises", a business owned and operated by petitioner and his wife.  Petitioner set Maxi's hours of operation; however, some beauticians were given keys to provide services outside of normal business hours.  Beauticians generally set their own schedule, but petitioner required beauticians to be

available during Maxi's normal business hours to accommodate walk-in customers. Beauticians were not precluded from working for other salons. Petitioner could terminate a beautician's services at any time, and, on a few occasions, beauticians were dismissed for providing poor service. Petitioner required all beauticians to share reception duties, as needed.

Health and disability insurance benefits were not provided by petitioner. Petitioner provided dental insurance for the first quarter of 1994, although it was the beautician's responsibility to maintain premium payments thereafter. Vacation and sick days were unpaid.

In the notice of determination respondent determined that the beauticians listed therein were employees of Maxi's, and that petitioner was not entitled to relief under section 530 of the Revenue Act of 1978. Respondent attached to the notice of determination an Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment (Excise or Employment Tax) (Form 2504) in which respondent proposed that petitioner consent to immediate assessment and collection of $12,716.19 in taxes, and $4,375.66 in section 6651(a)(1) and 6656(a) additions to tax, consisting of the following amounts:

| Tax Period Ended | Kind of Tax and I.R.C. Section | Amount of Tax | Sections 6651 & 6656 Additions to Tax |
|---|---|---|---|
| March 31, 1994 | FICA - 3101, 3111, 3402, 3406, & 3509 | $1,842.83 | $612.19 |
| June 30, 1994 | FICA - 3101, 3111, 3402, 3406, & 3509 | 1,046.95 | 366.43 |
| September 30, 1994 | FICA - 3101, 3111, 3402, 3406, & 3509 | 863.56 | 302.25 |
| December 31, 1994 | FICA - 3101, 3111, 3402, 3406, & 3509 | 1,246.57 | 436.30 |
| December 31, 1994 | FUTA - 3301, 3111, 3306, & 3405 | 1,604.49 | 561.57 |
| March 31, 1995 | FICA - 3101, 3111, 3402, 3406, & 3509 | 1,470.00 | 514.50 |
| June 30, 1995 | FICA - 3101, 3111, 3402, 3406, & 3509 | 2,175.88 | 761.56 |
| September 30, 1995 | FICA - 3101, 3111, 3402, 3406, & 3509 | 710.99 | 248.85 |
| December 31, 1995 | FICA - 3101, 3111, 3402, 3406, & 3509 | 422.03 | 105.50 |
| December 31, 1995 | FUTA - 3301, 3111, 3306, & 3405 | 1,332.89 | 466.51 |
| | Total: | $12,716.19 | $4,375.66 |

## Independent Contractor vs. Employee

To determine whether a taxpayer is an independent contractor or an employee, common law rules apply. Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995). Courts consider various factors to determine whether an employment relationship exists between the parties, including: (1) The degree of control exercised by the principal; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the

principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. Id. All the facts and circumstances of each case should be considered. Id.

The right of control is ordinarily the crucial factor in determining whether an employer-employee relationship exists. Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual; it is sufficient if he has the right to do so. Sec. 31.3401(c)-1(b), Employment Tax Regs.; see also Weber v. Commissioner, supra at 388. Similarly, the employer need not set the employee's hours or supervise every detail of the work environment to control the employee. Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987). Moreover, the degree of control necessary to find employee status varies according to the nature of the services provided. Weber v. Commissioner, supra at 388; see also Reece v. Commissioner, T.C. Memo. 1992-335.

Petitioner contends that he had no control over the individual beauticians he hired; therefore they were independent contractors. We disagree.

Taking the record as a whole, we find that the individuals

listed in the notice of determination were employees in the years at issue. We arrive at this conclusion based on the following facts.

There is no evidence that the parties believed they were creating an independent contractor relationship besides petitioner's self-serving testimony. Forms W-2 were purportedly issued for tax year 1994 to individuals he treated as employees during 1994. However, the record shows that Forms W-2 were also issued to a number of beauticians, including those that provided services after the first quarter of 1994. Contrary to Mr. Brents' testimony, there are no records of Forms 1099 issued to any of the beauticians during 1994 or 1995, including those who petitioner contends were independent contractors. No beauticians testified at trial.

Petitioner relies on the terms of the purported chair rental agreements to establish that the beauticians were independent contractors. He also relies on these contracts to show the parties' intentions. At trial, petitioner referred to a number of contracts he entered into with the various beauticians who provided services for him during the years at issue, but failed to produce any contracts. Without the contracts in the record for our review, we cannot assume that petitioner created an independent contractor relationship with the beauticians.

Petitioner had the authority to terminate a beautician for

unsatisfactory services because the beautician "made the entire place look bad". Furthermore, despite the fact that beauticians could set their own work schedule, petitioner required beauticians to adjust their schedules to ensure walk-in customers could be served.

Petitioner argues that the beauticians' ability to work for other salons demonstrates a lack of continuity in the employer-employee relationship. We find this argument without merit. In Kelly v. Commissioner, T.C. Memo. 1999-140, this Court found that working for a number of employers during a tax year does not necessitate treatment as an independent contractor.

After review of the entire record, we find that petitioner failed to establish that the beauticians in question were independent contractors. The weight of the evidence leads us to conclude that the beauticians were petitioner's employees during the years at issue.

Section 530 of the Revenue Act of 1978

Section 530 of the Revenue Act of 1978 provides relief for employers who mistakenly claim their employees as independent contractors. In other words, even under our finding that the beauticians were petitioner's employees during the years at issue, petitioner may not be liable for the employment taxes if he falls under the safe harbor of section 530.

In order for petitioner to prevail, he must show the

following: (1) Petitioner has not treated any of the beauticians as employees for any period; (2) petitioner has filed all Federal tax returns (including information returns) with respect to each beautician on a basis consistent with petitioner's treatment of such individual as not being an employee; and (3) petitioner has a reasonable basis for not treating the beauticians as an employee. Revenue Act of 1978, sec. 530(a)(1), (3), 92 Stat. 2885, 2886.

Petitioner failed to meet the technical requirements of section 530. First, petitioner conceded that he treated the beauticians as employees for the first quarter of 1994, thus violating the first requirement that the beauticians were not treated as employees at any time. Section 530(a)(3) further clarifies this requirement by providing that if the "taxpayer (or a predecessor)" treated any individual holding a "substantially similar position as an employee", then section 530 relief is not available to the taxpayer. Revenue Act of 1978, sec. 530(a)(1), (3), 92 Stat. 2885, 2886. In the present case, petitioner also conceded that his predecessor treated her beauticians as employees, albeit they were not the same individuals working under petitioner,[6] although petitioner did not consistently treat

---

[6] We note that the statute does not require the individuals to be identical under predecessor and petitioner; rather, the analysis focuses on whether individuals were in substantially similar positions under both circumstances.

the beauticians under his management as employees.

Second, petitioner failed to file the requisite Federal tax returns, including information returns, as required under section 530(a)(1)(B). Petitioner conceded that Forms 1099 and Forms W-2 were not filed with the IRS. The record is also clear that petitioner failed to file Forms 940 and 941. Although petitioner relies on Mr. Brents' testimony that the Forms 1099 and Forms W-2 were prepared and delivered to each beautician, we do not find Mr. Brents' self-serving testimony credible. It is well settled that we are not required to accept the self-serving testimony of petitioner or his accountant in the absence of corroborating evidence. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Finally, petitioner may be afforded relief under section 530 if he had a reasonable basis for not treating the beauticians as employees. This requirement may be established if petitioner's treatment of the individual beautician was based on any of the following: (1) Judicial precedent, published rulings, technical advice to the employer, or a letter ruling to the employer; (2) past examination of the employer by the IRS in which there was no assessment attributable to the treatment for employment tax purposes of individuals holding positions substantially similar to the position held by this individual; or (3) longstanding recognized practice of a significant segment of the industry in which the individual was engaged. Sec. 530(a)(2).

The record is devoid of any evidence that petitioner relied on a prior decision, in any form, or audit conducted by the IRS to support his claim for relief.  Petitioner's testimony that he researched the utility of chair rental agreements by speaking to hired beauticians or other salons in the area does not meet the burden of establishing an industrywide practice of treating beauticians as independent contractors.  Petitioner did not offer any witnesses to testify about an industry practice of renting chairs to beauticians and treating them as independent contractors.  See, e.g., Gen. Inv. Corp. v. United States, 823 F.2d.

Petitioner's final contention is that although he did not meet the statutory requirements of section 530, he is entitled to relief because he "complied with the spirit of section 530".  We recognize that section 530 was enacted by Congress to alleviate what it perceived as overzealous tax collection activity by the IRS.  See Boles Trucking, Inc. v. United States, 77 F.3d 236, 239 (8th Cir. 1996); Ren-Lyn Corp. v. United States, 968 F. Supp. 363, 366 (N.D. Ohio 1997).  In Erickson v. Commissioner, 172 Bankr. 900, 912 (Bankr. D. Minn. 1994), the court noted:

> The essence of the safe harbor provision is to grant protection to the taxpayer who has consistently treated workers as independent contractors but has not been previously challenged by the IRS.  In effect, where the taxpayer's filings have put the IRS on notice and the IRS has not acted without delay, the taxpayer must be shielded from the compounding effects of the error.

In the case before us, it is clear that petitioner is not in a situation tantamount to the protections intended by Congress.

Petitioner contends that he should not be responsible for the beauticians' taxes because "[the beauticians] didn't choose to file their taxes, and I don't feel that I should be burdened with their taxes." Congress has provided a statutory safe harbor for taxpayers in petitioner's situation. Petitioner could have avoided this result had he complied with these requirements.

Because the safe harbor of section 530 does not provide relief to petitioner, and in accord with our finding above that the beauticians were petitioner's employees rather than independent contractors, we hold that petitioner is liable for the employment taxes due as stated in the notice of determination. Respondent is sustained on this issue.

Sections 6651 and 6656

Respondent determined additions to tax for failure to timely file tax returns and make timely deposits on tax liability pursuant to sections 6651(a)(1) and 6656(a).

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return. The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. Sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a

maximum of 25 percent of the tax.  Id.

Section 6656(a) imposes an addition of tax for failure to deposit any amount of tax with a Government depository.  As relevant herein, the addition to tax is equal to 10 percent if the failure is for more than 15 days.  Sec. 6656(b)(1)(A)(iii).

Both sections 6651(a)(1) and 6656(a) impose liability unless "such failure is due to reasonable cause and not due to willful neglect".  "Willful neglect" means a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).  Reasonable cause is found if the taxpayer exercised ordinary business care and prudence but was nevertheless unable to perform its tax obligations in a timely manner.  Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir. 1994); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner advanced no reasons why his employment tax returns for the years at issue were not filed timely or why he failed to pay and deposit the employment taxes.  Respondent, therefore, is sustained on the additions to tax under sections 6651(a)(1) and 6656(a).

We have considered all arguments by the parties, and, to the extent not discussed above, conclude they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.