T.C. Memo. 2007-249


UNITED STATES TAX COURT


URIAH VINCENT JONES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18719-05.               Filed August 27, 2007.


Uriah Vincent Jones, pro se.

<u>Ladd C. Brown, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of $2,274 in petitioner's Federal income tax for 2003.  After concessions by petitioner, the issue for decision is whether petitioner is liable for self-employment tax.  This turns on whether petitioner was an employee or independent contractor of DBMA Corporation (DBMA) during 2003.

FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Palm Beach Gardens, Florida.

From August through December 2003, petitioner, a marble and tile installer, worked on a condominium renovation for DBMA. Barry Shapiro (Mr. Shapiro), president of DBMA, hired petitioner to work on the condominium renovation.

Petitioner submitted a series of proposals to Mr. Shapiro describing the work petitioner was to perform on the condominium renovation.  Mr. Shapiro contracted petitioner to perform the tile work on the condominium renovation.  In August 2003, petitioner began work by honing the floors and showers of the condominium and taking other preparatory steps in order to complete his work.  From August through December 2003, petitioner worked a total of approximately 16 days on the condominium renovation.

DBMA paid petitioner a fixed sum for his work on the condominium renovation.  If petitioner needed any additional assistants, petitioner was responsible for hiring, paying, and supervising them.

While working on the condominium renovation, petitioner provided his own work tools.  In addition to work tools,

petitioner also supplied grout, cork, cork glue, and soundproofing materials.  Mr. Shapiro supplied the tile.  DBMA did not reimburse petitioner for the supplies he purchased because these amounts were incorporated into petitioner's proposal.

Initially, petitioner set his own hours of work on the condominium renovation.  A dispute arose between petitioner and Mr. Shapiro regarding the hours petitioner worked.  After this dispute, petitioner agreed to maintain a fixed work schedule of 10:30 a.m. to 4:30 p.m. when working on the condominium renovation.

DBMA paid petitioner $8,360 for his work on the condominium renovation.  At no point did petitioner ever sign or submit a Form W-4, Employee's Withholding Allowance Certificate (Form W-4).  After petitioner completed work on the condominium renovation, Mr. Shapiro did not engage the services of petitioner on other jobs.  In 2003, petitioner worked for three other companies that treated him as an employee, and all three companies issued him Forms W-2, Wage and Tax Statement (Forms W-2), as opposed to Forms 1099-MISC, Miscellaneous Income (Forms 1099-MISC).

Petitioner timely filed a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for 2003.  Petitioner conceded that he did not report the income he received from DBMA

on his 2003 tax return.  After filing his 2003 income tax return, petitioner received a Form 1099-MISC, from DBMA.  Petitioner did not amend his 2003 tax return after receiving the Form 1099-MISC.

Respondent timely mailed a notice of deficiency to petitioner with respect to taxable year 2003, and petitioner timely petitioned the Court.

## OPINION

The burden of proof is on petitioner to show that respondent's determination set forth in the notice of deficiency is incorrect.  Rule 142(a)(1);[1] Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner has neither claimed nor shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent with regard to any factual issue.  Accordingly, petitioner bears the burden of proof.  Rule 142(a).

The Federal Insurance Contributions Act (FICA), secs. 3101-3125, 68A Stat. 415 (1954), taxes a portion of the wages paid to an employee (FICA tax).  The portion of the wages taxed is defined in section 3121(a).  Under FICA, the employer and the employee each pay a like amount of tax.  See secs. 3101, 3111.  The employer withholds the employee's half of the FICA tax and remits it, along with the employer's half, to the Department of

---

[1]  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue.

the Treasury.  See sec. 3102.  The FICA tax has two components, the old age, survivors, and disability insurance portion (OASDI) and the hospital insurance portion.  For the year in issue, the OASDI rate was 6.2 percent for both the employer and employee, a total of 12.4 percent.  The hospital insurance portion was 1.45 percent for both the employer and the employee, a total of 2.9 percent.  The combined rate of the FICA tax was 15.3 percent for 2003.  DBMA did not withhold any FICA tax because it treated petitioner as an independent contractor.

Independent contractors are not subject to the FICA tax; however, they are subject to a tax under chapter 2 of the Code, the Self-Employment Contributions Act of 1954 (SECA), secs. 1401-1403.  See secs. 1401 and 1402.  The SECA tax is a different tax from the FICA tax, though the SECA tax contains the same two components as the FICA tax.  The SECA rate is equal to the sum of the employer and employee tax rates under FICA.

For the purposes of FICA, an employee is defined as:  (1) any officer of a corporation; (2) any common law employee; (3) any individual in a specified occupation group who is not a common law employee; and (4) any individual who performs services that are included under an agreement entered into pursuant to the Social Security Act, 42 U.S.C. sec. 218 (2000).  Sec. 3121(d).

A common law employee-employer relationship exists when:

the person for whom the services are performed has the
right to control and direct the individual who performs
the services, not only as to the result to be
accomplished by the work but also as to the details and
means by which that result is accomplished.  That is,
an employee is subject to the will and control of the
employer not only as to what shall be done but how it
shall be done.  In this connection, it is not necessary
that the employer actually direct or control the manner
in which services are performed; it is sufficient if he
has the right to do so.  The right to discharge is also
an important factor indicating that the person
possessing that right is an employer.  Other factors
characteristic of an employer, but not necessarily
present in every case, are the furnishing of tools and
the furnishing of a place to work, to the individual
who performs the services.  In general, if an
individual is subject to the control or direction of
another merely as to the result to be accomplished by
the work and not as to the means and methods for
accomplishing the result, he is an independent
contractor. * * *  [Sec. 31.3121(d)-1(c)(2), Employment
Tax Regs.]

Petitioner contends that he was a common law employee of
DBMA.  We consider the following factors to decide whether a
worker is a common law employee or an independent contractor:
(1) The degree of control exercised by the principal; (2) which
party invests in work facilities used by the individual; (3) the
opportunity of the individual for profit or loss; (4) whether the
principal can discharge the individual; (5) whether the work is
part of the principal's regular business; (6) the permanency of
the relationship; and (7) the relationship the parties believed
they were creating.  Weber v. Commissioner, 103 T.C. 378, 387
(1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).  All the

facts and circumstances of each case are considered, and no single factor is dispositive. Id.

   1. Degree of Control

   The degree of control necessary to find employee status varies with the nature of the services provided by the worker. Id. at 388. To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual; it is sufficient if he has the right to do so. Id.; see sec. 31.3401(c)-1(b), Employment Tax Regs.

   Similarly, the employer need not set the employee's hours or supervise every detail of the work environment to control the employee. Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987). The fact that workers set their own hours does not necessarily make them independent contractors. Id.

   As the project manager, Mr. Shapiro did have some control over petitioner. For instance, after a dispute regarding the hours petitioner kept, Mr. Shapiro and petitioner agreed that petitioner would maintain a fixed work schedule. Despite this, petitioner was free to complete by the means and methods of his choice, the work he was contracted to do. Petitioner advised Mr. Shapiro that the floor in the laundry room needed to be resloped. Additionally, petitioner completed work offsite at his home

workshop after advising Mr. Shapiro as to the best means and method to complete the project.

Based on the record before us, petitioner's degree of control over his own work on the condominium renovation is consistent with independent contractor status.

### 2.  Investment in Facilities

The fact that a worker provides his or her own tools generally indicates independent contractor status.  Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 53 (5th Cir. 1990).

Petitioner provided his own tools.  Furthermore, other than the tile, petitioner supplied most of the supplies he used such as grout, soundproofing materials, cork, and cork glue. Additionally, petitioner was not reimbursed for the materials that he provided.  These amounts were included in the proposals that petitioner provided.

Based on the record before us, this factor is consistent with independent contractor status.

### 3.  Opportunity for Profit or Loss

As noted supra, petitioner sent proposals to Mr. Shapiro regarding the work to be done on the condominium renovation. DBMA paid petitioner a fixed sum regardless of the time spent on the job.  If petitioner underestimated the cost of the supplies needed or the time it took to complete the job, petitioner bore the risk of losing money, not Mr. Shapiro.  Furthermore, if

assistants were needed, it was petitioner's sole responsibility to hire and pay them.  Additionally, petitioner bore the risk of loss on any loss or damage to his work tools.

Based on the record before us, petitioner's opportunity for profit or loss on his work on the condominium renovation is consistent with independent contractor status.

### 4.  Right To Discharge

Petitioner was never fired by Mr. Shapiro, but Mr. Shapiro chose not to engage petitioner on any future projects.  It appears that as long as petitioner's work was quality work that met the job specifications, petitioner could not have been dismissed from his duties on the condominium renovation. Petitioner phoned Mr. Shapiro approximately 3 weeks after petitioner completed work on the condominium renovation.  At that time, only after petitioner had finished his duties on the condominium renovation, Mr. Shapiro notified petitioner that he did not wish to work with petitioner on any other projects.

Based on the record before us, the fact that petitioner could not be discharged as long as his work met the specifications is consistent with independent contractor status.

### 5.  Integral Part of Business

As the project manager on the condominium renovation, Mr. Shapiro's responsibilities included making sure that the work was

completed. The condominium renovation required tile work. Accordingly petitioner's job was an integral part of DBMA's work.

Based on the record before us, the integral nature of petitioner's work could suggest employee status. This, however, is but one factor that must be weighed among the others.

6. Permanency of the Relationship

A transitory work relationship may point toward independent contractor status. Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 305 (5th Cir. 1998). If, however, the worker works in the course of the employer's trade or business, the fact that he does not work regularly is not necessarily significant. Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 430 (2d Cir. 1974) (transients may be employees); Kelly v. Commissioner, T.C. Memo. 1999-140 (working for a number of employers during a tax year does not necessitate treatment as an independent contractor). In considering the permanency of the relationship, we must also consider the principal's right to discharge the worker and the worker's right to quit at any time.

DBMA contracted petitioner to work on the condominium renovation and paid petitioner for the job he performed, regardless of the amount of time petitioner spent on the work. Petitioner worked for approximately 16 days, from August through December 2003, on the condominium renovation and received 14 checks from DBMA for his work. Although petitioner stated that

DBMA promised him more work, whether or not the relationship continued was within the discretion of Mr. Shapiro. Once DBMA completed the condominium renovation, the relationship between petitioner and DBMA ceased.

Before petitioner began the condominium renovation, he was an employee of Koeckritz Enterprises, Inc. (Koeckritz). Prior to working for Koeckritz, in 2003 petitioner also worked for Celtic Marble & Tile, Inc., and Selective HR Solutions V, Inc. During 2003, petitioner received a total of three Forms W-2 from the three employers. This, however, does not require us to conclude that petitioner worked for DBMA as an employee.

Based on the record before us, petitioner's lack of a permanent relationship with DBMA is consistent with independent contractor status.

7. Relationship the Parties Thought They Created

Petitioner has worked on tile and marble installation for dozens of companies and stated that he always has been treated as an employee by those other companies. Mr. Shapiro stated that DBMA never had any employees and always has treated the individuals who worked for DBMA as independent contractors and issued them Forms 1099-MISC. Although the parties thought they were creating different relationships, we note that petitioner did not submit a Form W-4 to DBMA as he submitted to his three

employers.  The record does not indicate that petitioner requested or inquired about a Form W-4 from DBMA.

Based on the record before us, the facts are consistent with independent contractor status.

8.  <u>Conclusion</u>

In the matter before us, although one factor might indicate an employer-employee relationship, the vast majority suggest that petitioner was an independent contractor of DBMA.  Having weighed the evidence and considered the totality of the circumstances, we conclude that petitioner was an independent contractor of DBMA. As a result, he is responsible for self-employment tax for 2003.

In reaching our holding herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.